UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KIZALEE NOBLIT,<br><br>       Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>       Defendant. | No. 3:13-cv-00628-HU<br><br>**FINDINGS AND**<br>**RECOMMENDATION** |

Merrill Schneider
Schneider Kerr & Gibney Law Offices
P.O. Box 14490
Portland, OR 92793

    Attorney for Plaintiff

Ronald K. Silver
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

Lars J. Nelson
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

Page 1 - FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge:

On April 11, 2013, Plaintiff Kizalee Noblit ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of the Social Security Administration ("SSA" or "Commissioner"), dated February 14, 2013, finding Plaintiff ineligible for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. On appeal, Plaintiff asserts that she meets or equals Listing 12.05C relating to intellectual disability, and that the Administrative Law Judge ("ALJ") erred by failing to consider this listing at step three of the sequential evaluation process. She also asserts that the ALJ erred by improperly disregarding third party testimony—namely, the testimony provided by Plaintiff's partner, Charlyn Austin ("Austin").

In her response brief, filed on March 6, 2014, the Commissioner concedes that this case should be remanded so the ALJ can develop the record regarding Plaintiff's educational background and determine if her impairments meet or equal Listing 12.05C—something the ALJ originally failed to do. Thus, the only disputed issues before the Court are: (1) whether a remand for an immediate payment of benefits is warranted based on Plaintiff's evidence of equivalency to Listing 12.05C, and (2) whether the ALJ erred in her treatment of Austin's testimony. For the reasons that follow, the Commissioner's decision should be reversed and this case should be remanded for further proceedings before the SSA.

///
///
///

Page 2 - FINDINGS AND RECOMMENDATION

**I. PROCEDURAL BACKGROUND**

Plaintiff protectively filed an application for SSI on November 4, 2009.[1] (Tr. 20, 40, 190, 243.) She initially alleged disability beginning on March 18, 1980, her date of birth, but later amended that date to February 10, 2009. (Tr. 41-42, 159; Pl.'s Opening Br. at 1.) Plaintiff alleged disability due to schizoaffective disorder, posttraumatic stress disorder ("PTSD"), bipolar disorder, homicidal tendencies, antisocial personality disorder, anger issues, a learning disability, arthritis, and nerve damage. (Tr. 103.)

Plaintiff's application for SSI was denied initially on May 12, 2010, and upon reconsideration on September 24, 2010. (Tr. 20, 104-07, 113-14.) Having timely requested a hearing, Plaintiff then appeared and testified before ALJ Catherine Lazuran on November 8, 2011, in Portland, Oregon. (Tr. 20, 31, 37, 113.) On February 24, 2012, the ALJ issued a written decision finding Plaintiff not disabled and denying her claim for SSI benefits. (Tr. 31.) Plaintiff then requested review of the ALJ's decision by the Appeals Council, which was ultimately denied on February 14, 2013. (Tr. 1-3.) As a result, the ALJ's decision became the final decision of the Commissioner that is subject to judicial review. (Tr. 1-2.) This appeal followed on April 11, 2013.

**II. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

**A.    Legal Standard**

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any

---

[1] See footnote *infra* Part II.B.

Page 3 - FINDINGS AND RECOMMENDATION

medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are as follows:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal [one of the listed impairments]? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. The claimant bears the burden of proof for the first four steps in the process. *Bustamante v Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those four steps, then the claimant is not disabled. *Id.; Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails meet this burden, then the claimant is disabled, but if the Commissioner proves the claimant is able to perform other work which exists in the national economy, then the claimant is not disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

///

///

**B.   The ALJ's Decision**

At the first step of the five-step sequential evaluation process, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since November 4, 2009, the application date."[2]  (Tr. 22.)  At the second step, the ALJ found that Plaintiff had the following severe impairments: schizoaffective disorder, learning disorder, and history of alcoholism and drug abuse.  (Tr. 22.)

At the third step, the ALJ found that Plaintiff's combination of impairments were not the equivalent of those on the Listing of Impairments.[3]  (Tr. 22.)  The ALJ then assessed Plaintiff's residual functional capacity ("RFC") and found that she could "perform a full range of work at all exertional levels," subject to the following limitations: (1) Plaintiff "can only perform simple, routine tasks involving no interaction with the public and no more than occasional interaction socially at work," and (2) Plaintiff

---

[2] It appears that the ALJ is actually referring to the protective filing date. (*Compare* Tr. 20 *and* Tr. 190, *with* Tr. 159-64.)  The protective filing date is "the date a written statement, such as a letter, an SSA questionnaire or some other writing, is received at a social security office, at another Federal or State office designated by [the SSA], or by a person [the SSA] ha[s] authorized to receive applications for [it] as the filing date of an application for benefits."  20 C.F.R. § 416.340.  "The SSA will use this date rather than the date of the official signed application for benefits 'if the use of that date will result in [a claimant's] eligibility for additional benefits."  *Dashti v. Astrue*, 508 F. App'x 347, 348 n.1 (5th Cir. 2013) (quoting 20 C.F.R. § 416.340).

[3] The Listing of Impairments is found at 20 C.F.R. Part 404, Subpart P, Appendix 1, and described at 20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926.

Page 5 - FINDINGS AND RECOMMENDATION

"should avoid moderate exposure to hazards, such as unprotected heights." (Tr. 23.)

At the fourth step, the ALJ noted that Plaintiff "has no past relevant work." (Tr. 29.) In light of Plaintiff's age, education, work experience, and RFC, at the fifth step, the ALJ found that there were jobs existing in significant numbers in the national and local economy that she could perform, including small products assembly, laundry sorter, and conveyer line bakery worker. (Tr. 30.) Based on the finding that Plaintiff could perform jobs existing in significant numbers in the national economy, the ALJ concluded that Plaintiff had not been under a disability, as defined under the Social Security Act, from the protective filing date of November 4, 2009, through the date of the ALJ's decision, February 24, 2012. (Tr. 31.)

### III. STANDARD OF REVIEW

The court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett*, 180 F.3d at 1097). Instead, the court must consider the entire

Page 6 - FINDINGS AND RECOMMENDATION

record, weighing both the evidence that supports the Commissioner's conclusions, and the evidence that detracts from those conclusions. *Id.* However, if the evidence as a whole can support more than one rational interpretation, the ALJ's decision must be upheld; the court may not substitute its judgment for the ALJ's. *Bray*, 554 F.3d at 1222 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## IV. DISCUSSION

**A.   Listing 12.05C: Intellectual Disability**

Plaintiff first argues that she meets or equals Listing 12.05C relating to intellectual disability, and that the ALJ erred by failing to consider this listing at step three of the sequential evaluation process. Listing 12.05

> explains that intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The listing further says that the level of severity for the intellectual disability impairment is met when any of four sets of additional requirements is satisfied. The third of those four sets requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Thus, Listing 12.05C has three main components: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation.

*Kennedy v. Colvin*, 738 F.3d 1172, 1175-76 (9th Cir. 2013) (internal citations, quotation marks, and brackets omitted).

As an initial matter, the parties do not appear to dispute that Plaintiff meets or equals the third element of Listing 12.05C. As the Commissioner concedes in her response brief, the ALJ

Page 7 - FINDINGS AND RECOMMENDATION

determined that Plaintiff "had the severe impairment of schizoaffective disorder, which would impose an additional significant work-related limitation of functioning." (Def.'s Resp. Br. at 5.)  Nothing more is required to satisfy the third element of Listing 12.05C.  *See, e.g., Stavrakis v. Colvin*, No. 6:12-cv-01929-SI, 2014 WL 1584494, at *6 (D. Or. Apr. 21, 2014) ("If the ALJ finds that a claimant has another severe impairment at step two of the sequential analysis, then the [third element of Listing 12.05C] is satisfied.").

The first element requires Plaintiff "to demonstrate that [s]he had 'significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period.'" *Id.* at *5 (citations omitted).  Several judges in this district have "found 'that a valid adult IQ score can be reflective of an impairment that manifested during the claimant's developmental period.'" *Id*. "Circumstantial evidence such as 'attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history' can also support finding significantly subaverage general intellectual functioning with deficits in adaptive functioning beginning before age [twenty-two]." *Id.*

Satisfying the second element, on the other hand, requires an intelligence quotient ("IQ") score of 60 to 70.  *Kennedy*, 738 F.3d at 1176.  In cases where, as here, "more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler

Page 8 - FINDINGS AND RECOMMENDATION

series, . . . the lowest of these [is used] in conjunction with [Listing] 12.05." *Id.* at 1176 n.2 (citation omitted).

Plaintiff asserts in her opening brief that an intellectual evaluation performed by Dr. Patrick Ethel-King on April 19, 2010, combined with Plaintiff's self-reports to Dr. Ethel-King regarding her educational background, "are consistent with the first two requirements of [L]isting 12.05C." (Pl.'s Opening Br. at 8.) Plaintiff reported to Dr. Ethel-King that she attended special education classes prior to dropping out of high school. (Tr. 489.) She was also candid about the fact that she had been convicted of forgery and welfare fraud in 2009. (Tr. 489.) Dr. Ethel-King then administered the Wechsler Adult Intelligence Scale III ("WAIS-III") to Plaintiff, who received a verbal intelligence quotient ("IQ") score of 67, a performance IQ score of 80, and a full scale IQ score of 71. (Tr. 487, 491.) Dr. Ethel-King noted that Plaintiff's "performance was thought to be a reasonably valid representation of her current level of functioning" and diagnosed a learning disorder. (Tr. 491.)

In her written decision, the ALJ discounted Plaintiff's testimony, stating, among other things: " "Further bearing on the claimant's credibility is her criminal record, which includes a 2009 conviction for welfare fraud and forgery, as well as a few theft III's."[4] (Tr. 25.) The ALJ also rejected Dr. Ethel-King's diagnosis of a learning disorder because it was "not consistent

---

[4] Plaintiff does not challenge the ALJ's adverse credibility determination on appeal, and in fact concedes that her "general credibility has been damaged by past acts of dishonesty[.]" (Pl.'s Reply Br. at 2.)

Page 9 - FINDINGS AND RECOMMENDATION

with the evidence that claimant was in regular education in school," when in actuality the portion of Dr. Ethel-King's opinion cited by the ALJ clearly states that Plaintiff "reported an academic history positive for receiving Special Education services." (Tr. 28, 489.)

The Commissioner acknowledges that the latter finding was "problematic," but nevertheless argues that a remand is appropriate because Plaintiff's discredited testimony is the only record evidence regarding her alleged participation in special education classes. (Def.'s Resp. Br. at 5.) ("[T]he ALJ's reasons for discounting Dr. Ethel-King's diagnosis of [a] learning disorder are problematic. If Ms. Noblit's testimony was credit[ed], it is possible that ALJ could find she met Listing 12.05C. The Commissioner opposes crediting Ms. Noblit's testimony, however, because Ms. Noblit's testimony is unchallenged and, *decidedly*, not credible. Therefore this matter should be remanded for the ALJ to (1) develop the record regarding Ms. Noblit's educational background, and (2) consider [for the first time] whether she met or equaled Listing 12.05C.").

The Court agrees with the Commissioner that the present action should be remanded for further proceedings before the SSA, not an immediate payment of benefits. As in this case, the ALJ in *Stavrakis* failed to address Listing 12.05C in his decision and the plaintiff argued that he met the elements on appeal. 2014 WL 1584494, at *4. The record evidence indicated, *inter alia*, that the plaintiff was born with neurological defects due to complications during birth, received social security benefits from age nine up until he was incarcerated in his early adult years, was

Page 10 - FINDINGS AND RECOMMENDATION

enrolled in special education throughout primary and secondary school, unsuccessfully attempted to earn his general equivalency degree, struggled with reading and writing for roughly twenty years, received low scores on math and reading tests, and received a verbal IQ score of 67, performance IQ score of 75 and a full scale IQ score of 68 on the most recently administered WAIS-III—which the psychologist felt was an accurate reflection of the plaintiff's current functioning. *Id.* at *5-6. Judge Simon nonetheless concluded that the record was not clear whether the plaintiff met or equaled Listing 12.05C, noting that the ALJ was "'in a better position than this court' to weigh the evidence and make that determination." *Id.* at *4 (quoting *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989)).

The same observation holds true in the present case. The record is not clear as to whether Plaintiff meets or equals Listing 12.05C, any more than it was in *Stavrakis*. Indeed, the record has not been thoroughly developed and it is far from clear that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Accordingly, the Court recommends that this case be remanded for further proceedings before the SSA. *See Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) ("[T]he proper course, *except in rare circumstances*, is to remand to the agency for additional investigation or explanation. . . . Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly

Page 11 - FINDINGS AND RECOMMENDATION

evaluated.") (emphasis added; citation and internal quotation marks omitted).

**B.   Lay Witness Testimony**

Plaintiff also asserts that the ALJ erred by improperly disregarding testimony provided by her partner, Austin. In determining whether a claimant is disabled, an ALJ is required to consider lay witness testimony concerning a claimant's ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). Such testimony is competent evidence which cannot be disregarded without providing specific reasons that are germane to each witness. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Inconsistencies between the lay witness's testimony and the claimant's presentation to treating physicians or the claimant's activities of daily living is another. *Barber v. Astrue*, No. 1:10-cv-01432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012).

Austin's testimony was provided by way of an adult function report prepared on November 20, 2009. (Tr. 213-20.) According to Austin, Plaintiff's daily activities include taking medications, watching television, playing video games, playing with Austin's children, and attending doctor's appointments when necessary. (Tr. 213.) Austin testified that Plaintiff does not take care of anyone else and needs reminders regarding personal hygiene, taking medications, and caring for their cat.[5] (Tr. 213-15.)  She also

---

[5] The Court notes that a medical treatment note dated November 13, 2009, states that Plaintiff "is able to function as a care giver." (Tr. 456.)

Page 12 - FINDINGS AND RECOMMENDATION

testified that Plaintiff experiences difficulties with house and yard work, preparing meals, sleeping due to physical pain and nightmares, going out in public, saving money, managing a checking account, making appropriate purchasing decisions, concentration, controlling her emotions, and a number of activities involving physical exertion. (Tr. 214-18.)

The ALJ addressed Austin's adult function report at page twenty-nine of her written decision, stating:

> Consideration is given to the statement of Charlyn Danyel Austin, the claimant's partner or spouse, who provided a written statement dated November 20, 2009. While Ms. Austin details significant limitations in her statement, these observations are considered with great caution because it appears Ms. Austin neither possesses the expertise or the motivation to offer an objective or functional assessment, and her opinion appears to be colored by affection for the claimant. Still, these observations have been taken into account in reaching the above [RFC] finding because they demonstrate the claimant has a greater functional capacity than she has alleged. Ms. Austin, for example, described the claimant as playing video games, cleaning the cat's litter box, doing dishes, reading, and watching television.

(Tr. 29) (internal citation omitted).

Plaintiff contends that the ALJ failed to properly explain the weight given to Austin's testimony, and to the extent the ALJ rejected portions of Austin's testimony, she failed to provide germane reasons for doing so. The Commissioner agrees that "a generalized lack of expertise or motivation to offer an objective or functional assessment is not a germane credibility consideration." (Def.'s Resp. Br. at 9.) Yet, the Commissioner maintains that any error is harmless because the ALJ provided two "germane considerations"—the first being the ALJ's observation that Austin's testimony appeared to be "colored by affection," and the second being that "the ALJ found that many of Ms. Austin's

Page 13 - FINDINGS AND RECOMMENDATION

identified limitation [we]re accounted for in the [RFC]." (Def.'s Resp. Br. at 9-10.)

The second "germane consideration" identified by the Commissioner——that the ALJ found the RFC accounted for "many" of the limitations identified by Austin——is nothing more than a misnomer, as "many" is not "all" and less than "all" means the ALJ is required to provide germane reasons for rejecting the excluded portion of the lay witness's testimony. *Cf. Bayliss*, 427 F.3d at 1218 ("The ALJ accepted the testimony of Bayliss's family and friends that was consistent with the record of Bayliss's activities and the objective evidence in the record; he rejected portions of their testimony that did not meet this standard. The ALJ's rejection of certain testimony is supported by substantial evidence and was not error.").

With respect to the first "germane consideration——the ALJ's observation that Austin's testimony appeared to be "colored by affection"——the Commissioner places significant weight on *Greger v. Barnhart*, 464 F.3d 968 (9th Cir. 2006). In that case, the Ninth Circuit upheld an ALJ's rejection of a lay witness's testimony, stating:

> Likewise, the ALJ did not find Shields credible and so disregarded her affidavit which attested to Greger's fatigue and shortness of breath following his surgery and to pain and numbness in his hands.
>
> . . . The ALJ found that Shields' 'statements are inconsistent with [Greger's] presentation to treating physicians during the period at issue, and with [Greger's] failure to participate in cardiac rehabilitation.' The ALJ also considered Shields' 'close relationship' with [the claimant], and that she was possibly 'influenced by her desire to help [him].' The ALJ's reasons for doubting Shields' credibility are germane to her; accordingly, it was not error for the ALJ to disregard her testimony.

Page 14 - FINDINGS AND RECOMMENDATION

*Id.* at 972 (brackets in the original).

The Commissioner cited *Greger* for a similar proposition in *Sylvester v. Astrue*, No. 03:11-CV-699-HZ, 2012 WL 2899244 (D. Or. July 13, 2012), arguing that a "personal relationship" is sufficient grounds to reject a lay witness's testimony. *Id.* at *4. Judge Hernandez determined that *Greger* was distinguishable insofar as the ALJ (1) used the "personal relationship" as the primary reason for considering the lay witness's testimony with caution, and (2) failed to discuss the nature of the relationship between the claimant and the lay witness or point to any facts supporting the notion that the lay witness was in any way influenced by a desire to aid the claimant. *Id.* Ultimately, Judge Hernandez directed the ALJ to clarify her findings on remand because it was not clear whether she actually accepted or rejected the lay witness's testimony. *Id.*

Similarly, in this case, it is not entirely clear whether the ALJ intended to accept or reject any or all of Austin's testimony. Assuming the ALJ in fact rejected portions of Austin's testimony, *Greger* is distinguishable from the circumstances in this case for the same reasons Judge Hernandez distinguished it in *Sylvester*. There may very well be germane reasons why any or all of Austin's testimony should be rejected, but the fact that testimony from a family member or loved one "appears to be colored by affection for the [social security] claimant," standing alone and without further explanation, is not one of them.

In short, in course of evaluating whether Plaintiff meets or equals Listing 12.05C, a matter the Commissioner has already conceded warrants remand for further proceedings before the ALJ,

Page 15 - FINDINGS AND RECOMMENDATION

the Court recommends directing the ALJ to clarify her findings with respect to Austin's testimony.  (*See also* Def.'s Resp. Br. at 12) ("Moreover, if the Court finds an error in assessing Ms. Austin's opinion, this error can be addressed on remand.").

## V. CONCLUSION

For the reasons stated, the Commissioner's decision should be reversed and this case should be remanded for further proceedings before the SSA.

## VI. SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due **July 25, 2014.**  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.  If objections are filed, then a response is due **August 11, 2014.**  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this  7th  day of July, 2014.

/s/ Dennis J. Hubel
_____
DENNIS J. HUBEL
United States Magistrate Judge

Page 16 - FINDINGS AND RECOMMENDATION